FILED

OCT 11 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

C 24 07133 TLT

| | |
|---|---|
| UNITED STATES OF AMERICA Ex Rel. AMEER ALGHUSAIN [UNDER SEAL]<br><br>*Plaintiff,*<br><br>vs.<br><br>[UNDER SEAL] CALTRAIN, PENINSULA CORRIDOR JOINT POWERS Board, BALFOUR BEATTY INFRASTRUCTURE, INC., PROGRAM MANAGEMENT GROUP, LLC, OLSON REMCHO LAWYERS, LLP; HERZOG RAILROAD SERVICES, INC, TRANSIT AMERICA SERVICES, INC, QUALITY ENGINEERING, INC.; U.S. RAIL SYSTEMS, INC., MICHELLE BOUCHARD, JOSEPH VINCENT NAVARRO, SETH ANDREW WORDEN, BRET GEORGE, PETER WEBB, WAYNE RICHARDSON, SCOTT RICHARDS, KEITH GILLIAM, GEORGE MENDOZA, PHILIP GILMOUR, AARON NEELY, SCOT SIDLER, JOHN HOGAN, SHERRY L. BULLOCK, CHRISTOPHER MICHAEL HARVEY, AND HENRY FLORES.<br><br>*Defendant.* | Case No.: _____<br><br>**COMPLAINT**<br><br>**FILED UNDER SEAL**<br>**FALSE CLAIMS ACT (FCA), 31 U.S.C. §§3729 - 3733**<br><br>**CIVIL ACTION LAWSUIT**<br><br>**JURY TRIAL DEMANDED** |

## 1. INTRODUCTION

1. This is a Civil action brought by me, Ameer Alghusain, (herein "Plaintiff" or "Relator"), as a Relator on behalf of the United States of America, I move the United States of America pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 - 3733, to recover treble damages,

1

civil penalties, and other relief arising from the Defendants' fraudulent scheme to knowingly submit, and cause others to submit, false claims for payment to the Federal Government. The False Claims Act is designed to combat and prevent fraudulent actions by contractors, grantees, and others who seek to improperly receive government funds. This action is brought to hold the Defendants accountable for their conduct in the multi-billion-dollar "CALTRAIN Electrification Project," (herein the "Project"), a critical infrastructure initiative funded (and still receiving funding) by both state and federal grants.

2. The False Claims Act imposes liability on any person or entity that knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval to the United States Government or its designated agencies. In furtherance of this objective, Congress enacted the Qui Tam provisions of the FCA, empowering private citizens like the Plaintiff to serve as relators, exposing fraud and recovering funds on behalf of the federal government. Under these provisions, Plaintiff seeks to recover damages on behalf of the United States based on Defendants' illegal conduct, which caused the U.S. Government to pay inflated claims, fund substandard work, and suffer immense financial losses due to the misrepresentation and misapplication of federal funds. This lawsuit is premised on an extensive scheme of deception, misrepresentation, and manipulation carried out by Defendants, including CALTRAIN, the Peninsula Corridor Joint Powers Board, Balfour Beatty Infrastructure, Inc., and others, who collectively conspired to defraud the U.S. Government by engaging in the following fraudulent activities:

3. Knowingly Submitting False Claims for reimbursement under government contracts by inflating costs, falsifying work completion reports, and submitting false certifications of compliance with federal contracting requirements.

4. Falsifying Compliance with the Disadvantaged Business Enterprise ("DBE") Program to fraudulently obtain government approval and funding, using front companies and sham

2

partnerships that were neither minority- nor women-owned as required by federal regulations.

5. Engaging in a Pattern of Billing for Unperformed and Unnecessary Work by manipulating invoices, certifying falsified project costs, and submitting false reports to federal oversight agencies to conceal delays, failures, and non-compliance.

6. Creating Sham Joint Ventures and Manipulating Contract Allocations among themselves to siphon off federal funds intended for legitimate small business contractors, depriving the government and citizens of the United States of the intended benefit of those funds.

## 2. NATURE OF THE CASE

7. This Complaint arises from Defendants' pervasive pattern of fraudulent and deceptive practices in their performance and oversight of the CALTRAIN Electrification Project, which spans 52 miles between San Francisco and San Jose, California. Through deliberate misconduct, Defendants repeatedly misrepresented their compliance with contract requirements, engaged in fraudulent billing, and knowingly submitted false claims and certifications to federal agencies, including the U.S. Department of Transportation ("DOT"), the Federal Railroad Administration (FRA) and the Federal Transit Administration (herein "FTA"). These fraudulent actions resulted in the United States Government disbursing substantial sums of taxpayer money to Defendants for work that was not performed in accordance with federal safety standards, project specifications, or contractual obligations.

8. Defendants' fraudulent scheme began in 2016 when they were awarded initial contracts to electrify and modernize the CALTRAIN corridor. Since that time, Defendants have engaged in a complex web of deceit, which included fabricating safety certifications, creating fictitious entities to qualify for preferential contracting terms, and systematically misclassifying employees to avoid paying legally required wages and benefits. Despite multiple opportunities to correct these

3

violations, Defendants chose to conceal their fraud, perpetuating an unsafe and incomplete infrastructure project while continuing to bill the federal government under the false pretense of project compliance.

### 3. JURISDICTION AND VENUE

9. Jurisdiction is proper in this Court pursuant to 31 U.S.C. § 3732(a), which confers jurisdiction over actions brought under the False Claims Act ("FCA") in any judicial district where a Defendant resides, transacts business, or where any act proscribed by the FCA occurred. This provision ensures that actions to recover damages and civil penalties under the FCA may be brought in the jurisdictional venues where the alleged fraudulent conduct took place or where Defendants sought to profit from their unlawful actions. In this case, Defendants, including the Peninsula Corridor Joint Powers Board, Balfour Beatty Infrastructure, Inc., and other entities, engaged in conduct that occurred and had substantial effects within this district, spanning from San Jose to San Francisco, thereby invoking the jurisdiction of this Court.

10. Furthermore, federal question jurisdiction arises under 28 U.S.C. § 1331 because this action is predicated upon the enforcement of federal statutes, specifically the False Claims Act, 31 U.S.C. §§ 3729 et seq., which imposes liability on any individual or entity that knowingly submits, or causes to be submitted, false or fraudulent claims for payment or approval to the United States Government. The issues presented in this Complaint involve interpreting and applying complex federal regulations and statutes, further solidifying federal jurisdiction.

11. Venue is proper in the Northern District of California under 31 U.S.C. § 3732(a), which provides that an FCA action may be brought in any judicial district where the defendant or any of the defendants reside, conduct business, or where any act proscribed by the FCA occurred. Venue is also proper in this case per 28 U.S. Code § 1391 - Venue generally, a substantial part of the events and omissions giving rise to the claims occurred within this judicial district, specifically in

4

San Mateo County, San Francisco County, and Santa Clara County. Defendants, including CALTRAIN, Balfour Beatty Infrastructure, Inc., Herzog Railroad Services, Inc., and others, maintained their principal places of business, conducted project management, and submitted fraudulent claims and certifications to federal oversight agencies from their offices in this district. The Defendants directed, orchestrated, and executed their fraudulent activities—ranging from submitting false progress reports, fraudulent compliance certifications, and falsified invoices to federal agencies—within this district, thereby making this venue the appropriate forum to adjudicate these claims.

12. Additionally, specific actions underlying the claims, such as the submission of falsified Disadvantaged Business Enterprise (herein "DBE") certifications, misrepresentations in contract negotiations, and inflated invoices, occurred at project sites and offices located in the Northern District of California, specifically the rail line from San Jose to San Francisco. Moreover, many of the fraudulent claims were directed to federal agencies with oversight within this district, and the impacts of the Defendants' conduct were felt most acutely in this region, which served as the locus of the project and the corresponding fraud.

13. This Court also has supplemental jurisdiction over any related state law claims pursuant to 28 U.S.C. § 1367(a), as such claims form part of the same case or controversy under Article III of the United States Constitution. The state law claims share a common nucleus of operative facts with the federal FCA claims because they arise from the same fraudulent conduct, involve the same parties, and seek redress for overlapping harms. Specifically, the state law claims are based on Defendants' false representations, unlawful conduct, and unjust enrichment within the state of California, and adjudicating these claims together promotes judicial efficiency and economy by allowing the Court to resolve all issues arising from a common course of conduct in a single proceeding.

14. Thus, the combination of federal and supplemental jurisdiction ensures that this Court is the proper and most efficient forum for addressing the entirety of the allegations set forth in this Complaint. The Court has jurisdiction to hear and determine all federal and state law claims asserted herein, to grant declaratory and injunctive relief, and to adjudicate damages and penalties as warranted under the applicable legal standards.

## 4. PARTIES

15. Plaintiff/Relator, Ameer Alghusain ("Plaintiff" or "Relator"), is a citizen of the United States residing in Santa Clara County, California. Plaintiff is a distinguished and highly credentialed Railroad and Trains Engineer, possessing over twenty (20) years of experience in the rail and transit industries across multiple jurisdictions, including the United States, Asia, and Europe. Plaintiff holds both a bachelor's and master's degree in electrical engineering and has served in various senior technical roles on complex rail projects globally. During his tenure on the CALTRAIN Electrification Project ("PCEP"), He was employed on the CALTRAIN Electrification Project since 2019 and personally witnessed, documented, and reported the fraudulent activities described herein. Plaintiff held a critical role in project management, engineering and technical oversight of the CALTRAIN project, during which he directly observed, documented, and reported pervasive patterns of fraudulent activity, material misrepresentations, and systemic non-compliance with federal and state regulations by the Defendants. Plaintiff brings this action on behalf of the United States of America as a whistleblower under the False Claims Act ("FCA"), seeking to expose and remedy the extensive fraudulent scheme perpetrated by the Defendants that resulted in significant financial harm to the federal government and compromised the safety and integrity of a major public transportation project.

16. Plaintiff United States of America ("the Government") is the real party in interest in this action, represented herein by Plaintiff/Relator pursuant to the qui tam provisions of the False

Claims Act, 31 U.S.C. § 3730(b). The Government, through its designated federal agencies, including the United States Department of Transportation ("DOT"), the Federal Railroad Administration ("FRA") and the Federal Transit Administration ("FTA"), provided substantial federal funding to the CALTRAIN Electrification Project, which was intended to support the modernization and safety enhancements of the 52-mile commuter rail corridor between San Francisco and San Jose, California. The Government's interest in ensuring the proper expenditure and oversight of public funds has been materially compromised by the Defendants' knowing submission of false claims, misrepresentations regarding project compliance, and fraudulent conduct, thereby causing substantial financial losses to the United States Treasury and jeopardizing public safety.

17. Defendant, CALTRAIN, is a government entity operated by the Peninsula Corridor Joint Powers Board, responsible for the operation and modernization of the CALTRAIN rail corridor. CALTRAIN served as a central participant in the enterprise, awarding contracts to co-conspirator entities and facilitating the fraudulent activities described in this complaint.

18. Defendant Peninsula Corridor Joint Powers Board ("PCJPB" or "CALTRAIN") is a government entity established under the laws of the State of California and funded primarily through a combination of federal and state grants, in addition to local contributions. Defendant PCJPB is responsible for overseeing the planning, construction, modernization, and operation of the CALTRAIN rail corridor. As a recipient of federal funding for the CALTRAIN Electrification Project, CALTRAIN is subject to the regulations and compliance requirements set forth by federal funding authorities, including the Federal Railroad Administration (FRA), the Federal Transit Administration ("FTA") and the United States Department of Transportation ("DOT"). PCJPB and CALTRAIN principal place of business is located at 1250 San Carlos Avenue, San Carlos, California 94070. At all relevant times, CALTRAIN, acting through its officers, employees, agents,

contractors, and affiliates, conspired with other Defendants to engage in the fraudulent conduct described herein and knowingly submitted false claims for reimbursement to the federal government.

19. Defendant, Balfour Beatty Infrastructure, Inc. ("Balfour") is a foreign multinational construction services company headquartered in the United Kingdom and registered to do business in California. Balfour was engaged as the primary contractor for the CALTRAIN Electrification Project, responsible for the construction, electrification, and final testing of the rail line modernization. Balfour was a primary contractor on the CALTRAIN Electrification Project, engaging in repeated acts of racketeering, including but not limited to mail fraud, wire fraud, and obstruction of justice and have intentionally and directly violated the false claim act. Balfour has a principal business address located at 2121 South El Camino Real, Suite 1000, San Mateo, California 94403. During its role as the primary contractor, Balfour directed, managed, and controlled numerous subcontractors and affiliates, including Co-Defendants, in furtherance of the unlawful schemes described herein. Balfour knowingly submitted and caused to be submitted false claims and certifications for payment, misrepresented compliance with contract requirements, and conspired to circumvent federal and state regulations intended to ensure safety, accountability, and lawful disbursement of public funds. Defendant Balfour is an employer, contractor, and/or subcontractor as defined under the Federal Railroad Safety Act ("FRSA"), National Transit Systems Security Act ("NTSSA"), and the California Labor Code, and has served as a primary contractor on multiple railway and transit infrastructure projects.

20. Defendant Herzog Railroad Services, Inc. ("Herzog") is a Missouri corporation and a subcontractor on the CALTRAIN Electrification Project. Herzog colluded with other Defendants to falsify compliance reports, inflate costs, and manipulate project timelines.

21. Defendant Transit America Services, Inc. ("TASI") is a wholly owned subsidiary of Herzog

8

and an operating arm for its rail contracts. TASI operates and maintains the CALTRAIN fleet of trains and the railroad tracks, TASI receives more than $65 million annually from CALTRAIN since at least 2016, TASI's participation in the illegal scheme included manipulating workforce reports, making false certifications, and concealing safety violations. TASI fraudulently obtained multiple extensions of the CALTRAIN contracts by bribing the executives and managers of CALTRAIN, and recently obtained at least $25 million in new annual contract from CALTRAIN to operate and maintain the new electrified electric rail lines, this payment is coming from Federal grants allocated to CALTRAIN electrification project. Herzog, through its control and ownership of TASI, is responsible for managing, directing, and supervising all operations and contractual obligations related to the CALTRAIN project.

22. Defendant US Rail Systems, Inc. ("US Rail") is a contractor and subcontractor that performed work on the CALTRAIN project. US RAIL is a corporation organized under the laws of the State of California with a principal place of business at 444 S. Flower Street, Suite 1300, Los Angeles, California 90072US Rail engaged in racketeering acts, including fraudulent invoicing, submission of falsified compliance reports, and conspiracy to obstruct federal investigations. US Rail recently obtained $1.6 million annual contract as contractor for TASI and subcontractor for CALTRAIN. US Rail obtained this annual contract under the table, without public bid, by bribing CALTRAIN and TASI managers and officers. The mastermind behind US Rail is Defendant Scott Richards who is in default to another related lawsuit in this district by not responding to or appearing at the Court, please see case No. 3:24-cv-01863-JSC Ghusain v. Balfour, currently pending in this Court. As a direct participant in the CALTRAIN construction and modernization efforts, US RAIL was actively engaged in the preparation and submission of fraudulent work reports, compliance certifications, and invoices, all of which were materially false and designed to induce payment by the federal government under false pretenses. US RAIL played a central role in

the implementation and concealment of the scheme to misappropriate federal funds. US Rail is an employer, contractor, and/or subcontractor as defined under the FRSA, NTSSA, and California Labor Code, and has engaged in the provision of rail services on multiple projects.

23. Defendant Program Management Group, LLC (herein "PMG"). Defendant Program Management Group, LLC ("PMG") is a California limited liability company that provided project management, consulting and oversight services on the CALTRAIN Electrification Project. PMG facilitated the transfer of fraudulent payments, manipulated project schedules, and concealed the true status of the project. PMG, acting through its officers and agents, facilitated and supported the submission of fraudulent project documentation, thereby enabling other Defendants to circumvent compliance obligations and obtain unwarranted payments. PMG's principal office is located at 3527 Mt. Diablo Blvd., Suite 314, Lafayette, California 94549. At all relevant times, PMG was complicit in and benefited from the fraudulent activities orchestrated by Defendants, including the misrepresentation of Disadvantaged Business Enterprise ("DBE") participation and the falsification of project deliverables. Defendant SHERRY L. BULLOCK is the principal registered owner of Defendant PMG, at the same time, Defendant SHERRY L. BULLOCK is a government employee of CALTRAIN with the title CALTRAIN Modernization Program Manager, in an apparent and actual conflict of interest, Defendant ("SHERRY') has not disclosed her true relationship, if at all, to PMG on California government form 700: Statements of Economic Interests, that mandate that every elected official and public employee who makes or influences governmental decisions is required to submit a Statement of Economic Interest. The Form 700 provides transparency and ensures accountability in two ways: 1. it provides necessary information to the public about an official's personal financial interests to ensure that officials are making decisions in the best interest of the public and not enhancing their personal finances, and 2. it serves as a reminder to the public

official of potential conflicts of interest so the official can abstain from making or participating in governmental decisions that are deemed conflicts of interest. The PMG entity is managed by Defendant Sherry L. Bullock and has been used as a vehicle to perpetuate fraudulent business practices in concert with the named defendants.

24. Individual Defendants, including Bret George, Peter Webb, Wayne Richardson, Scott Richards, and Philip Gilmour, are high-ranking executives, managers, owners and officers of the Corporate Defendants, each of whom played a direct and substantial role in orchestrating and managing the affairs and operations of the enterprise as alleged herein.

25. Individual Defendants acting under the auspices of Balfour Beatty, were strategically embedded within CALTRAIN, creating an inherent conflict of interest by maintaining simultaneous employment with multiple entities. Through their dual roles, these Defendants directed and influenced the allocation of multi-million-dollar federally funded contracts to U.S. Rail Systems and Program Management Group, thereby funneling substantial financial benefits to themselves and defendants named in this action in violation of established ethical, fiduciary and government standards.

26. Defendant Bret George is an executive officer of Herzog Railroad Services, Inc., and has been designated to manage and operate the CALTRAIN contract on behalf of Herzog since 2009. In this capacity, Mr. George has exercised managerial and operational authority over Herzog's and TASI's activities, including oversight of project execution, compliance, and financial management.

27. Defendant Peter Webb is an individual residing in the United Kingdom and employed as a supervisor at Balfour's San Mateo office located at 2121 East El Camino Real, San Mateo,

11

California 94403. Mr. Webb performs his duties as a full-time employee of Defendant Balfour Beatty Infrastructure, Inc. and/or as an independent consultant for Defendant United, utilizing email addresses and communication channels linked to both entities in his capacity as a manager overseeing project activities.

28. Defendant Wayne Richardson is an individual and citizen of the United Kingdom, employed in a supervisory role at Balfour's San Mateo office at 2121 East El Camino Real, San Mateo, California 94403. Mr. Richardson serves as a full-time employee of Defendant Balfour Beatty Infrastructure, Inc. and/or as an independent consultant or contractor for Defendant United. He routinely utilizes email addresses affiliated with multiple entities, reflecting his dual role and capacity in overseeing project management.

29. Defendant Scott Richards is an individual and citizen of the United Kingdom who serves as a supervisor at the same San Mateo office of Defendant Balfour Beatty Infrastructure, Inc., performing his duties as a full-time employee and/or independent contractor for CALTRAIN, TASI and Balfour Beatty Infrastructure, Inc. Mr. Richards has operational control over key components of the CALTRAIN project and utilizes communication channels with CALTRAIN, TASI, Balfour and PMG, demonstrating his managerial responsibilities across several capacities.. Mr. Richards has direct managerial oversight on several CALTRAIN project operations and communicates through both Balfour and United channels, indicative of his involvement in multiple overlapping roles.

30. Defendant Philip Gilmour is an individual and citizen of the United Kingdom, he is the co-owner and the Chief Operating officer of US RAIL, performing his duties as a full-time employee and/or independent contractor for CALTRAIN, TASI and Balfour Beatty Infrastructure, Inc. Mr. Gilmour has operational control over key components of the CALTRAIN project and utilizes communication channels for both Balfour and United, demonstrating his managerial

responsibilities across several capacities.

31. Defendant Olson Remcho LLP is a law firm duly organized and existing under the laws of the State of California, designated as General Counsel for CALTRAIN and responsible for providing legal advice and representation to the Joint Powers Board ("JPB"). While ostensibly representing CALTRAIN, Olson Remcho has improperly extended legal cover and advocacy to all Defendants in this action, thereby engaging in unethical conduct and creating a conflict of interest by serving as de facto counsel for multiple parties with adverse interests.

32. Defendant Joseph Vincent Navarro is an individual residing in the Commonwealth of Pennsylvania. Mr. Navarro served as Deputy Director for CALTRAIN until his indictment by the San Mateo District Attorney's Office on criminal charges of embezzlement and misappropriation of public funds designated for the CALTRAIN project. Mr. Navarro has been formally charged with felony theft of public funds, resulting in substantial financial harm to the CALTRAIN federal funding. Mr. Navarro submitted false claims to the federal government using the CALTRAIN federal funds for payments, benefits and awards in violation of the False Claim Act.

33. Defendant Seth Andrew Worden is an individual residing in the State of California who was employed by TASI and served as a contractor for CALTRAIN until his indictment by the San Mateo District Attorney's Office. Mr. Worden faces felony charges for theft and misuse of public funds earmarked for CALTRAIN, contributing to financial losses and mismanagement of taxpayer resources. Mr. Worden has been formally charged with felony theft of public funds, resulting in substantial financial harm to the CALTRAIN federal funding. Mr. Worden submitted false claims to the federal government using the CALTRAIN federal funds for payments, benefits and awards in violation of the False Claim Act.

34. Defendant Michelle Bouchard is the Executive Director of CALTRAIN, with primary responsibility for the overall administration, procurement, and contract management of the

organization. Ms. Bouchard oversees the execution and enforcement of all CALTRAIN-related agreements and is a key decision-maker in the allocation of funds and approval of contractual obligations. Defendant Bouchard enabled the scheme to be carried out by defendants, and she benefited from this scheme. Defendant Bouchard submitted false claims to the federal government using the CALTRAIN federal funds for payments, benefits and awards in violation of the False Claim Act.

35. Defendants Scot Sidler, John Hogan, Sherry L. Bullock, Christopher Michael Harvey, and Henry Flores are all individuals residing in Santa Clara County, California, and serve as employees, officers, and decision-makers for CALTRAIN. These Defendants collectively exercise authority over procurement contracts and have personal and financial interests in various consulting firms and fictitious business entities, including Program Management Group, LLC, which they use to unlawfully influence contract awards and divert public funds. Defendants Scot Sidler, John Hogan, Sherry L. Bullock, Christopher Michael Harvey, and Henry Flores submitted false claims to the federal government using the CALTRAIN federal funds for payments, benefits and awards in violation of the False Claim Act.

36. Defendant Aaron Neely is the Project Director for the CALTRAIN project, employed by TASI based on the recommendations of other defendants and CALTRAIN. Mr. Neely, in collusion with other Defendants, including John Hogan, Scott Richards, Wayne Richardson, has engaged in conduct intended to undermine the integrity of the CALTRAIN project through mismanagement and fraudulent dealings. Defendants Neely submitted false claims to the federal government using the CALTRAIN federal funds for payments, benefits and awards in violation of the False Claim Act.

37. Defendants Quality Engineering Inc, is a company registered in California, Defendant KEITH GILLIAM and Defendant GEORGE MENDOZA are resident of the State of California

14

and they conspired with other defendants to approve documents for all, with clear conflict of interest, they provided false quality reports to CALTRAIN to submit to the United States of America to give legitimacy on all ill and incomplete documents produced by defendants and worked as an insider of CALTRAIN have CALTRAIN officially endorses and approve these false reports. Defendants Quality Engineering Inc, Defendant KEITH GILLIAM, and Defendants GEORGE MENDOZA submitted false claims to the federal government using the CALTRAIN federal funds for payments, benefits and awards in violation of the False Claim Act.

38. **Doe, Defendants 1-20**, are individuals or entities whose identities are currently unknown but who are believed to have conspired with or otherwise facilitated the illegal activities described herein. The Doe Defendants, designated as Does 1 through 20, are persons and/or entities presently unknown to the Plaintiff who are believed, based on information and belief, to have participated in, conspired with, or otherwise facilitated the unlawful conduct and schemes set forth herein. Their true identities and the extent of their involvement will be ascertained during discovery, and, upon such identification, the Plaintiff will seek to amend this Complaint to include their proper names and relevant allegations. Defendants Does 1 through 20 ("John Doe Defendants"), inclusive, are individuals and entities whose identities are presently unknown to Plaintiff. Upon information and belief, these Defendants participated in, conspired, aided, abetted, or otherwise assisted in the commission of the fraudulent acts described in this Complaint. These Doe Defendants, acting in concert with the named Defendants, intentionally concealed their identities and involvement to further evade detection and accountability. Plaintiff intends to seek leave to amend this Complaint to identify and include these additional parties once their identities and roles are ascertained through the course of discovery and further investigation.

39. At all relevant times, each of the Defendants was the agent, employee, co-conspirator, representative, partner, and/or joint ventures of each of the other Defendants and, in committing

the acts alleged herein, was acting within the course and scope of such agency, employment, representation, partnership, and/or joint venture, with the knowledge, permission, consent, and ratification of each of the other Defendants. Each Defendant aided and abetted the others in furtherance of the unlawful conduct and acted in concert to engage in the systematic submission of false claims, fraudulent inducements, and misrepresentations to the detriment of the United States. Accordingly, each Defendant is jointly and severally liable for the acts and damages alleged herein.

## 5. WAIVED DEFENDANTS

40. UNITED CONSTRUCTION MANAGEMENT Inc.("UNITED") is the former company where US Rail Systems Inc emerged from after disputes between owners, US Rail Systems Inc was formed by Defendant Scott Richards and Defendant Phil Gilmour to continue prior scheme of UNITED using different company names.

41. United Construction Management and its new sole owner settled a case (naming UNITED as defendant in that case) with the Plaintiff in this district Court in favor of Plaintiff. UNITED has agreed to testify as witness against defendants and provide all evidence and documents needed to prove this case, please see case No. 3:24-cv-01863-JSC Ghusain v. Balfour et al that involves Defendant Peter Webb, Defendant Wayne Richardson, Defendant Scott Richards and Defendant Balfour Beatty Infrastructure Inc. UNITED has agreed to cooperate and testify against Defendants, in exchange they will not be named in this lawsuit by Relator. However, the United States of America may pursue UNITED in civil or criminal proceeding as it sees necessary and appropriate.

## 6. SUMMARY OF ACTION

42. Defendants engaged in a sophisticated scheme to defraud the United States Government of billions of dollars, specifically in connection with the CALTRAIN Electrification Project. This scheme was perpetuated through a complex pattern of fraudulent activities, including the establishment of fictitious business entities, the creation of local and international shell companies, and the use of offshore bank accounts. Defendants simultaneously positioned themselves as both the recipients of federal funding and the procurement managers responsible for awarding contracts to these entities without disclosure to the federal government or the State of California. As a result, Defendants effectively operated as the beneficiaries of public funds while concealing their personal interests in the entities that received these lucrative contracts.

43. This fraudulent conduct has inflicted substantial harm on Disadvantaged Business Enterprises ("DBEs"), legitimate contractors, and employees of Transit America Services, Inc. ("TASI") and CALTRAIN since 2009. The Defendants' actions not only deprived these entities and individuals of fair and equitable access to business opportunities but also perpetuated a pattern of corruption and self-dealing at the expense of compliant and qualified businesses.

44. Defendants further exacerbated their fraudulent conduct by issuing deceptive bid solicitations and awarding sole-source contracts to companies they owned or controlled. Over the years, Defendants funneled millions of dollars in federal and state funding to these affiliated entities, thereby enriching themselves and avoiding regulatory scrutiny through the manipulation of procurement processes and fraudulent representations of compliance.

45. To conceal their illicit activities, Defendants fabricated documentation to falsely represent that they were in compliance with federal regulations concerning DBE participation, minority-owned businesses, and women-owned businesses. By falsifying certifications and misrepresenting

17

their use of these companies, Defendants misled government agencies into believing that they were adhering to legal requirements, when in fact, they were perpetuating a scheme to steer contracts to their own entities.

46. Plaintiff, Mr. Alghusain, is a highly qualified Railroad and Trains Engineer with over 20 years of experience working for various Rail and Transit agencies in the United States, Asia, and Europe. Mr. Alghusain holds a bachelor's degree in electrical engineering from Isra Jordanian University in Amman, Jordan, and a master's degree in electrical engineering from Cleveland State University in Ohio. He began his employment with Transit America Services, Inc. ("TASI") specifically for the CALTRAIN Electrification Project in November 2019 and remained in that capacity until he resigned in February 2022, he was approached by United, acting on behalf of Defendant Balfour Beatty Infrastructure, Inc., in June 2023, in an effort to solicit his high-level electrical engineering expertise and services and to use his name to close out the projects per FRA and FTA requirements.

47. During his tenure, Mr. Alghusain was designated as the Manager of Trains, responsible for overseeing the retirement of outdated diesel locomotives and the deployment of state-of-the-art electric trains into service for the CALTRAIN system. His role included supervising the transition to electrification and ensuring compliance with technical and safety standards.

48. On one occasion, Mr. Alghusain traveled in November 2021 to Salt Lake City, Utah, with Defendants Joseph Navarro, Henry Flores, and Christopher Harvey for a business meeting. During the trip, Mr. Alghusain incurred an expense of $1,405.64 for a lavish dinner, including expensive wine bottles that were consumed by Defendants Navarro, Flores, and Harvey, then Defendants Navarro, Flores, and Harvey left the restaurant without settling the bill. When Mr. Alghusain confronted Defendant Navarro regarding this incident, Navarro responded dismissively, stating, "Have TASI reimburse you. This is how we do it, and TASI will recover the money tenfold from

18

CALTRAIN." This statement evidence Defendants' cavalier attitude toward misappropriation of funds and their intent to continue perpetuating fraudulent financial practices.

49. In February 2022, a Herzog/TASI, Juan D. Mina, an employee under Mr. Alghusain's direct supervision broke down in tears, expressing to Mr. Alghusain that he had been subjected to persistent harassment and ridicule by CALTRAIN and TASI management. The employee disclosed that when he attempted to report the harassment, CALTRAIN and TASI managers responded by mocking him rather than addressing the complaint in a lawful and appropriate manner, thereby creating a hostile work environment.

50. Mr. Alghusain also witnessed several disturbing images in the possession of this employee which further corroborate the toxic and inappropriate conduct that permeates the management culture of CALTRAIN and TASI. The display of such images and the broader context of harassment complaints within the organization illustrate a pervasive environment of misconduct, which is actively concealed by the Defendants through intimidation and retaliation against those who seek to expose the truth. Even these events of sexual and physical assault were years ago, manager of CALTRAIN and Managers of TASI were circulating these pictures among themselves on continuous basis and will send them to other employees and contractors as an ongoing laughing matter. Mr. Alghusain resigned few days later (around February 10) after TASI and CALTRAIN refused to take proper and adequate action to assist the employee in protest to support the Miguel. Mr. Alghusain moved on with his career and worked as Manager at San Francisco International Airport on the AIRTRAIN Automted People Mover APM. Mr. Alghusain assisted Miguel in obtaining legal help, Miguel sued TASI in 2022 and the case was settled in Santa Clara County, in 2023. See Juan D. Mina vs JESSIE PIERES et al 22CV409307. CALTRAIN and Defendants banned Mr. Alghusain from riding the CALTRAIN trains, in violation of his constitutional rights. On June 1, 2023, Defendant United solicited Mr. Alghusain and offered Mr. Alghusain a

"contractor" position as Senior Electrical Trains &amp; Electrification Engineer to work for Balfour in the last stage of CALTRAIN electrification project.

 

51. Even these events of sexual and physical assault were years ago, manager of CALTRAIN and Managers of TASI were circulating these pictures among themselves and other employees as laughing matter. Mr. Alghusain resigned few days later after TASI and CALTRAIN refused to take action to assist the employee in protest to support the Miguel. Mr. Alghusain moved on with his career and worked as Manager at San Francisco International Airport on the AIRTRAIN Automted People Mover APM. Mr. Alghusain assisted Miguel in obtaining legal help, Miguel sued TASI in 2022 and the case was settled in Santa Clara County, in 2023. See Juan D. Mina vs JESSIE PIERES et al 22CV409307. CALTRAIN and Defendants banned Mr. Alghusain from riding the CALTRAIN trains, in violation of his constitutional rights. On June 1, 2023, Defendant United solicited Mr. Alghusain and offered Mr. Alghusain a "contractor" position as Senior Electrical Trains &amp; Electrification Engineer to work for Balfour in the last stage of CALTRAIN electrification project.

52. Defendants engaged in an intricate and sophisticated scheme designed to defraud the United

States Government of billions of dollars in connection with the CALTRAIN Electrification Project. This fraudulent scheme was carried out through the creation and utilization of fictitious entities, shell companies, and offshore bank accounts, whereby Defendants positioned themselves as both recipients of federal funding and as procurement managers awarding contracts to their own undisclosed entities. These actions were taken without proper disclosure to the U.S. Federal Government or the State of California, thereby undermining the integrity of public contracts and funding.

53. The Defendants' conduct has resulted in substantial harm to Disadvantaged Business Enterprises ("DBEs"), legitimate contractors, and employees of Transit America Services, Inc. ("TASI") and CALTRAIN, causing them to lose out on business opportunities and suffer financial and professional injuries since 2016.

54. Defendants further concealed their self-dealing by issuing misleading bid solicitations and awarding sole-source contracts to entities they owned or controlled, funneling millions of dollars to these entities under the guise of competitive procurement processes.

55. To perpetuate their fraudulent scheme, Defendants falsified documentation and misrepresented their compliance with federal regulations, falsely certifying that they engaged DBEs, minority-owned, and women-owned businesses in the performance of contracts. These misrepresentations were intended to mislead government agencies into believing that Defendants were compliant with legal requirements while diverting funds to their own entities.

56. Plaintiff, Mr. Alghusain, is a highly experienced Railroad and Trains Engineer with over 20 years of specialized experience with rail and transit agencies in the United States, Asia, and Europe. He holds a bachelor's degree in electrical engineering from Isra University in Amman, Jordan, and a master's degree in electrical engineering from Cleveland State University in Ohio. Mr. Alghusain was employed by Transit America Services, Inc. on the CALTRAIN Electrification Project from

21

November 2019 until June 2023, when he was approached by Defendant United Construction Management Inc. ("United") to provide his expertise on behalf of Defendant Balfour Beatty Infrastructure, Inc. ("Balfour") for the completion of the CALTRAIN Electrification Project.

57. During his tenure, Mr. Alghusain served as the Manager of Trains, tasked with overseeing the transition from diesel to electric locomotives, ensuring compliance with technical, safety, and operational standards.

58. On July 1, 2023, Defendant United offered Mr. Alghusain a position as a Senior Electrical Trains & Electrification Engineer, which he accepted. He was required to sign a three-year non-compete agreement as a condition of employment. Both Mr. Alghusain and Defendant Scott Richards, President of United, signed this agreement on June 1, 2023.

59. From July 3, 2023, until August 3, 2023, Mr. Alghusain was employed by Defendants in a joint employer relationship. He was assigned an office at Balfour's San Mateo location and provided with email addresses for both Balfour and United.

60. Despite being classified as an independent contractor, Mr. Alghusain was required to work over 50 hours per week under direct supervision in Balfour's offices, performing duties akin to that of a full-time employee without the benefits typically afforded to such employees.

61. Throughout his employment, Defendants failed to provide overtime pay, meal and rest breaks, or statutory employee benefits, resulting in his misclassification as an independent contractor in violation of California labor laws.

62. Defendants instructed Mr. Alghusain to sign off on safety, operations, and maintenance documents that he deemed inadequate, unsafe, and non-compliant with industry standards. When he raised these concerns, Defendants dismissed his warnings and pressured him to blindly sign off on submittals.

63. Defendants' negligence and refusal to address these safety concerns resulted in two near-fatal incidents involving the electrified rail system. Despite these warnings, Defendants continued to push for project completion without rectifying known safety deficiencies.

64. On August 3, 2023, after repeatedly refusing to sign inaccurate and unsafe documents, Mr. Alghusain was abruptly terminated by Defendant Peter Webb, who stated, "Do not bother coming to the office tomorrow. F*** off, you are fired," in a humiliating manner in front of Balfour employees and third-party contractors.

65. Subsequent to his termination, Defendants unlawfully utilized Mr. Alghusain's electronic signature on numerous technical and safety-related documents that were submitted to CALTRAIN without his knowledge or consent. By doing so, Defendants fraudulently misrepresented that these submittals had been reviewed, verified, and approved by a licensed and qualified engineer, thereby compromising the integrity and safety of the electrification project. This unauthorized use of Mr. Alghusain's signature constitutes a willful and deceptive act designed to conceal deficiencies in the project's safety and compliance standards, and further illustrates Defendants' ongoing pattern of fraudulent conduct.

66. As a result of the aforementioned conduct, on March 26, 2024, Plaintiff initiated a lawsuit in this District against Defendants Peter Webb, Wayne Richardson, Scott Richards, Balfour Beatty Infrastructure Inc., and United Construction Management Inc. The lawsuit seeks redress for Defendants' wrongful and unlawful actions, including misappropriation of Plaintiff's professional credentials, fraudulent misrepresentation, and violations of state and federal statutes regulating rail safety and employment rights.

67. On September 26, 2024, Plaintiff entered into a settlement agreement with Defendant United Construction Management Inc. ("United"). Under the terms of the settlement, United has agreed to cooperate fully with Plaintiff in the prosecution of this action, including providing

testimony, documentary evidence, and any other relevant materials that support the claims asserted herein. The settlement explicitly stipulates that United will submit all documents and correspondence necessary to substantiate the allegations set forth under the False Claims Act, thereby aiding in the comprehensive presentation of the fraudulent and unlawful conduct perpetuated by the remaining Defendants.

68. Plaintiff on many occasions verbally, in writing and via e-mails warned CALTRAIN, PENINSULA CORRIDOR JOINT POWERS Board, BALFOUR BEATTY INFRASTRUCTURE, INC., PROGRAM MANAGEMENT GROUP, LLC, OLSON REMCHO LAWYERS, LLP; HERZOG RAILROAD SERVICES, INC, TRANSIT AMERICA SERVICES, INC, QUALITY ENGINEERING, INC.; U.S. RAIL SYSTEMS, INC., MICHELLE BOUCHARD, JOSEPH VINCENT NAVARRO, SETH ANDREW WORDEN, BRET GEORGE, PETER WEBB, WAYNE RICHARDSON, SCOTT RICHARDS, KEITH GILLIAM, GEORGE MENDOZA, PHILIP GILMOUR, AARON NEELY, SCOT SIDLER, JOHN HOGAN, SHERRY L. BULLOCK, CHRISTOPHER MICHAEL HARVEY, AND HENRY FLORES about complying with Safety standards and regulations guarding misuse of tax payers public funds, all these efforts were ignored by Defendants.

## SUMMARY OF FRAUDULENT CONDUCT

69. Defendant CALTRAIN received $1.93 billion dollar grant from the US Federal government as of FY2021, this funding was exclusive and dedicated for the Electrification Project that will convert the old diesel line to electric trains with 25KV Alternating Current system.

70. From 2016 to the present, Defendants, through a calculated and multifaceted scheme, engaged in an orchestrated plan to defraud the United States Government and other federal

24

agencies, including the U.S. Department of Transportation ("DOT") and the Federal Transit Administration ("FTA"), by submitting false certifications of compliance with federal regulations, inflating project costs, and falsifying critical safety, operational, and maintenance milestones required under the CALTRAIN Electrification Project. The Defendants' actions were in direct violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, which prohibits any person or entity from knowingly submitting, or causing to be submitted, false claims for payment to the government, making or using false records or statements material to a false claim, or conspiring to defraud the government through the submission of false claims.

i. Specifically, Defendants knowingly submitted or caused to be submitted numerous false claims and fraudulent invoices to federal funding agencies by falsely certifying compliance with project specifications, safety protocols, and federal procurement standards. Such false certifications were intended to induce the United States to disburse funds under the terms of the federally funded contracts without Defendants having met the contractual and legal obligations required under the applicable federal statutes and regulations, including: 49 U.S.C. § 5323(m), which requires compliance with federal Buy America requirements mandating that iron, steel, and manufactured goods used in federally funded transit projects be produced in the United States.

ii. 2 C.F.R. Part 200, which outlines the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, requiring Defendants to maintain adequate documentation, internal controls, and cost accounting practices in connection with the use of federal funds.

iii. 49 C.F.R. Part 26, which establishes the standards for Disadvantaged Business Enterprise ("DBE") participation, mandates full and honest reporting of DBE compliance, and prohibits fraudulent misrepresentations regarding the use of DBE

subcontractors and minority-owned businesses.

71. The Defendants, including but not limited to Balfour Beatty Infrastructure, Inc. (herein "Balfour"), US Rail Systems, Inc., and Program Management Group, LLC (herein "PMG"), acted in concert to fraudulently inflate project costs, falsify completion timelines, and conceal non-compliance with federal safety standards. This unlawful conduct was perpetrated through the intentional submission of false claims to obtain federal payments, knowing that the project was plagued by serious technical deficiencies and safety violations. Defendants made material misrepresentations regarding project readiness, the quality and authenticity of work performed, and the proper expenditure of federal funds, resulting in substantial harm to the United States Government and the American public.

## 8. ALLEGATIONS, CAUSES OF ACTIONS AND CLAIMS

72. The False Claims Act, pursuant to 31 U.S.C. § 3729(a)(1), prohibits the following activities, all of which Defendants engaged in:

1. 31 U.S.C. § 3729(a)(1)(A): Knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval.

2. 31 U.S.C. § 3729(a)(1)(B): Knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim.

3. 31 U.S.C. § 3729(a)(1)(C): Conspiring to commit a violation of the False Claims Act.

4. 31 U.S.C. § 3729(a)(1)(G): Knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the government.

26

73. Defendants' fraudulent conduct included, but was not limited to, the following specific acts and misrepresentations:

1. Submission of Fraudulent Invoices: Defendants knowingly submitted numerous fraudulent invoices to the U.S. Government and CALTRAIN's financial offices that grossly overstated the amount of work completed, misrepresented compliance with contractual and regulatory requirements, and concealed substandard and incomplete work. Many of these invoices charged the federal government and CALTRAIN for work that was not performed, including charges for personnel who were not present on-site, and inflated costs for materials and services that did not conform to federal Buy America standards.

2. Falsification of Compliance Certifications: Defendants repeatedly submitted false certifications of compliance with the National Transit Systems Security Act ("NTSSA"), 6 U.S.C. § 1142, and the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109, falsely attesting that the work performed adhered to federal safety regulations and met the required technical specifications. These false certifications were used to support claims for payment and led to the disbursement of substantial federal funds under false pretenses.

3. Fabrication of Testing and Safety Documentation: Defendants knowingly falsified critical safety and testing documentation for various phases of the electrification project. This included fabricating results for electrical testing, operational performance, and safety validations that were never performed. By falsely representing that the project had successfully met safety milestones, Defendants misled federal regulators and compromised the integrity and safety of the rail system.

4. Misrepresentation of DBE Participation: Defendants falsely reported compliance with

27

49 C.F.R. Part 26, fraudulently claiming that Disadvantaged Business Enterprises ("DBEs") were engaged and performing a meaningful portion of the project work. In reality, Defendants set up shell companies and front entities to falsely inflate DBE participation numbers, thereby depriving legitimate minority-owned and women-owned businesses of federally mandated contracting opportunities.

74. As a direct and proximate result of the Defendants' fraudulent scheme, the United States Government suffered substantial financial losses, estimated to exceed $300 million dollars ($300,000,000) in damages over the duration of the project. This amount includes federal payments made based on false representations, the costs of re-work necessitated by substandard and defective work, and the expenditures associated with delays and safety violations caused by Defendants' actions.

75. Additionally, Defendants' fraudulent acts pose an ongoing threat to public safety, as many of the falsified safety documents and improperly executed work continue to be relied upon by CALTRAIN and its operators in the daily operation of the electrified rail corridor. Defendants' reckless disregard for public safety and federal regulations not only violated the FCA but also breached numerous statutory obligations under the Federal Railroad Safety Act and other federal safety regulations.

76. Through this action, Plaintiff seeks to hold Defendants fully accountable for their egregious and deliberate misconduct, recover the full measure of damages suffered by the United States, and impose the maximum statutory penalties allowable under the False Claims Act, including treble damages and civil penalties under 31 U.S.C. § 3729(a). Plaintiff further seeks a comprehensive accounting of all federal funds disbursed, restitution of amounts improperly obtained, and an injunction prohibiting Defendants from further violating federal law.

28

77. Pursuant to 31 U.S.C. § 3730(d), Plaintiff, as the Relator, for his role in exposing the Defendants' fraudulent conduct, seeks an award to be placed in a TRUST to benefit all CALTRAIN and TASI current and former employees and all other legitimate contractors, as well as reasonable attorney's fees and costs incurred in prosecuting this action. Plaintiff also requests that this Court grant all other relief deemed just and appropriate, including any additional remedies necessary to protect the public interest and ensure the integrity of the federal contracting process.

78. The named Defendants, including but not limited to CALTRAIN, the Peninsula Corridor Joint Powers Board, Balfour Beatty Infrastructure, Inc., Program Management Group, LLC, Olson Remcho LLP, Herzog Railroad Services, Inc., Transit America Services, Inc., Quality Engineering, Inc., U.S. Rail Systems, Inc., Michelle Bouchard, Joseph Vincent Navarro, Seth Andrew Worden, Bret George, Peter Webb, Wayne Richardson, Scott Richards, Keith Gilliam, George Mendoza, Philip Gilmour, Aaron Neely, Scot Sidler, John Hogan, Sherry L. Bullock, Christopher Michael Harvey, Henry Flores, engaged in a continuous scheme of fraudulent and unlawful activities, individually and collectively, in furtherance of defrauding federal and state governments, as well as private entities and contractors, of billions of dollars in connection with the CALTRAIN Electrification Project and other public infrastructure initiatives.

79. Defendants CALTRAIN, the Peninsula Corridor Joint Powers Board, Balfour Beatty Infrastructure, Inc, LLC negligently and/or willfully failed to detect or prevent the unlawful activities carried out by their officers, contractors, and affiliates, thereby providing the Defendants with a façade of legitimacy, which enabled them to procure substantial federal funding. This failure to exercise proper oversight resulted in direct and indirect losses to the United States Government and the State of California.

1. Defendant Olson Remcho LLP, through its partners and associates, provided legal cover and support for the fraudulent activities of the Defendants. This included signing off on contracts,

subcontracts, work orders, bid documents, and awards, and facilitating the approval of payments while concealing blatant conflicts of interest. Defendant Olson Remcho's actions enabled Defendants to evade detection and continue perpetrating their fraudulent schemes. As a direct result of Defendant Olson Remcho LLP fraudulent conduct and endorsement of false claims to be submitted to the federal government, the United States Government suffered substantial financial losses. These losses stem from the disbursement of federal funds based on false claims, fraudulent certifications, and the misrepresentation of the Project's compliance with safety and contractual obligations. In addition, the Defendants' actions compromised the integrity of the CALTRAIN Electrification Project, jeopardizing public safety and undermining the federal contracting process.

2. Defendants Herzog Railroad Services, Inc. and Transit America Services, Inc., through their officers, including Defendants Bret George, Seth Andrew Worden, and Aaron Neely, knowingly submitted and/or assisted in the submission of falsified invoices, fabricated DBE (Disadvantaged Business Enterprise) certifications, and fraudulent safety reports to CALTRAIN to secure inflated payments and increased federal funding. Defendants artificially inflated project values and exaggerated service fees billed to CALTRAIN, thereby misappropriating federal funds. As a direct result of the Defendants Herzog Railroad Services, Inc. and Transit America Services, Inc., through their officers, including Defendants Bret George, Seth Andrew Worden, and Aaron Neely fraudulent conduct, the United States Government suffered substantial financial losses. These losses stem from the disbursement of federal funds based on false claims, fraudulent certifications, and the misrepresentation of the Project's compliance with safety and contractual obligations. In addition, the Defendants' actions compromised the integrity of the CALTRAIN Electrification Project, jeopardizing public safety and undermining the federal contracting process.

80. Defendants engaged in a pattern of bribery and corruption, whereby they provided unlawful payments and illegal gratuities to public officials, specifically Defendants Michelle Bouchard,

30

Joseph Vincent Navarro, Scot Sidler, John Hogan, Sherry L. Bullock, Christopher Michael Harvey, and Henry Flores. These bribes included cash, luxury goods, access to exclusive golf courses and events, and expensive wines and liquors. In exchange, these public officials provided confidential bid information, ensured favorable treatment during the procurement process, and suppressed competing bids. Defendants Scott Richards, Bret George, and Seth Andrew Worden orchestrated these bribery schemes to secure an undue advantage in the awarding and performance of contracts.

81. Defendants were embedded within CALTRAIN carefully and over years and embedded within CALTRAIN contractors and consultants and were successful in funneling multi-million-dollar fraudulent contracts to Defendant U.S. Rail Systems, Program Management Group LLC, Herzog and TASI and Balfour Beatty Infrastructure, Inc., which in its turn funneled cash and benefits to these individual defendants personal accounts, Defendants were able to conceal these illicit transactions through a web of shell companies and undisclosed interests.

82. Defendants, through a coordinated enterprise involving numerous shell companies, co-conspirators, and complicit third parties, engaged in a pervasive and continuous pattern of racketeering activity in violation of 18 U.S.C. §§ 1962(c)-(d). The predicate acts underlying this RICO (Racketeer Influenced and Corrupt Organizations) claim include but are not limited to: Mail Fraud (18 U.S.C. § 1341): Defendants used the United States Postal Service and private interstate carriers to transmit falsified contracts, fraudulent certifications of compliance, and other materially misleading documents to public entities, with the intent to defraud. Wire Fraud (18 U.S.C. § 1343): Defendants employed interstate wire communications, including emails, facsimiles, and telephone calls, to disseminate false information regarding their eligibility for government contracts, financial capabilities, and compliance with federal and state regulations. Bribery of Public Officials (18 U.S.C. § 201): Defendants paid bribes and provided illegal gratuities to public officials in exchange for confidential bid information, preferential treatment during the procurement process, and

suppression of competing bids. Obstruction of Justice (18 U.S.C. § 1503): When federal investigators began scrutinizing Defendants' activities, they engaged in systematic destruction of evidence, altered financial records, and intimidated potential witnesses to prevent the discovery and prosecution of their unlawful conduct. Money Laundering (18 U.S.C. § 1956): Defendants engaged in complex financial transactions designed to conceal the origin, ownership, and control of the proceeds derived from their fraudulent schemes by funneling illicit funds through layers of shell companies, offshore accounts, and bogus contracts.

83. Defendant Quality Engineering Inc., through its officers Keith Gilliam and George Mendoza, knowingly participated in the fraudulent scheme by providing legitimacy to the deficient and falsified engineering documents submitted to CALTRAIN on behalf of Defendants Balfour Beatty Infrastructure, Inc., U.S. Rail Systems, Inc., and others. The submission of these falsified quality documents enabled the Defendants to continue receiving federal funds, resulting in significant financial loss to the United States Government and state entities.

3. Defendants collectively conspired to defraud federal and state agencies, obstruct justice, and conceal their illegal activities through a coordinated and systematic effort, which caused significant financial harm to the public and undermined the integrity of federally funded infrastructure projects. As a direct and approximate result of the Defendants Defendant Quality Engineering Inc., through its officers Keith Gilliam and George Mendoza fraudulent conduct, the United States Government suffered substantial financial losses. These losses stem from the disbursement of federal funds based on false claims, fraudulent certifications, and the misrepresentation of the Project's compliance with safety and contractual obligations. In addition, the Defendants' actions compromised the integrity of the CALTRAIN Electrification Project, jeopardizing public safety and undermining the federal contracting process.

4. As a direct and approximate result of the Defendants Michelle Bouchard, Joseph Vincent

Navarro, Scot Sidler, John Hogan, Sherry L. Bullock, Christopher Michael Harvey, and Henry Flores fraudulent conduct, the United States Government suffered substantial financial losses. These losses stem from the disbursement of federal funds based on false claims, fraudulent certifications, and the misrepresentation of the Project's compliance with safety and contractual obligations. In addition, the Defendants' actions compromised the integrity of the CALTRAIN Electrification Project, jeopardizing public safety and undermining the federal contracting process.

5. As a direct and approximate result of the Defendant US Rail Systems and Balfour Beatty Infrastructure Inc fraudulent conduct, the United States Government suffered substantial financial losses. These losses stem from the disbursement of federal funds based on false claims, fraudulent certifications, and the misrepresentation of the Project's compliance with safety and contractual obligations. In addition, the Defendants' actions compromised the integrity of the CALTRAIN Electrification Project, jeopardizing public safety and undermining the federal contracting process.

6. As a direct and approximate result of defendant CALTRAIN and PCJBP fraudulent conduct, the United States Government suffered substantial financial losses. These losses stem from the disbursement of federal funds based on false claims, fraudulent certifications, and the misrepresentation of the Project's compliance with safety and contractual obligations. In addition, the Defendants' actions compromised the integrity of the CALTRAIN Electrification Project, jeopardizing public safety and undermining the federal contracting process.

7. As a direct and approximate result of Defendant PROGRAM MANAGEMENT GROUP, LLC fraudulent conduct, the United States Government suffered substantial financial losses. These losses stem from the disbursement of federal funds based on false claims, fraudulent certifications, and the misrepresentation of the Project's compliance with safety and contractual obligations. In addition, the Defendants' actions compromised the integrity of the CALTRAIN Electrification Project, jeopardizing public safety and undermining the federal contracting process.

8. As a direct and approximate result of Defendants PETER WEBB, WAYNE RICHARDSON, SCOTT RICHARDS and PHILIP GILMOUR fraudulent conduct, the United States Government suffered substantial financial losses. These losses stem from the disbursement of federal funds based on false claims, fraudulent certifications, and the misrepresentation of the Project's compliance with safety and contractual obligations. In addition, the Defendants' actions compromised the integrity of the CALTRAIN Electrification Project, jeopardizing public safety and undermining the federal contracting process.

9. As a direct and approximate result of Defendant BRET GEORGE and Defendant AARON NEELY fraudulent conduct, the United States Government suffered substantial financial losses. These losses stem from the disbursement of federal funds based on false claims, fraudulent certifications, and the misrepresentation of the Project's compliance with safety and contractual obligations. In addition, the Defendants' actions compromised the integrity of the CALTRAIN Electrification Project, jeopardizing public safety and undermining the federal contracting process.

84. Defendants submitted, and caused the submission of, the false claim, and made a false statement or record with the knowledge of the falsity. In § 3729(b)(1), knowledge of false information is defined as being (1) actual knowledge, (2) deliberate ignorance of the truth or falsity of the information, or (3) reckless disregard of the truth or falsity of the information, here all defendants

## 9. OTHER ALLEGATIONS, CAUSES OF ACTIONS AND CLAIMS

85. If the United States elects to intervene in this action, Plaintiff Ameer Alghusain will file a separate legal action in this Court against these same Defendants to allege other claims including but not limited to claims of violations of THE RACKETEERING INFLUENCED AND

CORRUPT ORGANIZATIONS ACT (RICO) 18 U.S.C. §§ 1961-1968 and Claims related to the unjust enrichment, the Likelihood of confusion and the theft of his Intellectual property (IP) by Defendants such as his trademarks, , trade secrets, business secrets, patents, service marks, trade and business names: AMERICAN RAILWAYS™ and US RAIL™, and USA RAILWAYS™.

86. If the United States elects not to intervene in this action, Plaintiff Ameer Alghusain, will request leave from this Court to amend this complaint to add other claims including but not limited to claims of violations of THE RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) 18 U.S.C. §§ 1961-1968 and Claims related to the unjust enrichment, the Likelihood of confusion and the theft of his Intellectual property (IP) by Defendants such as his trademarks, , trade secrets, business secrets, patents, service marks, trade and business names: AMERICAN RAILWAYS™ and US RAIL™, and USA RAILWAYS™.

87. This will preserve the integrity of the intervention of United States to be focused on the false claim acts and possible Criminal RICO and to allow the Government to be unbiased and proper in its intervention.

## 10. PRAYER FOR RELIEF

88. WHEREFORE, Plaintiff, Ameer Alghusain, in his capacity as Relator on behalf of the United States of America, respectfully prays that this Honorable Court enter judgment in favor of the Plaintiff and the United States of America and against the Defendants, and grant the following relief:

1. Treble Damages: Pursuant to 31 U.S.C. § 3729(a)(1), award the United States Government treble damages in an amount to be determined at trial for all losses incurred as a result of Defendants' fraudulent conduct, including, but not limited to, damages resulting from the submission of false

35

claims, falsification of compliance certifications, and the misrepresentation of Disadvantaged Business Enterprise ("DBE") participation, as well as any additional consequential damages suffered by the Government due to the Defendants' unlawful actions;

2. Civil Monetary Penalties: Impose the maximum civil penalties as provided under 31 U.S.C. § 3729(a)(1)(G) for each and every false or fraudulent claim and statement made, used, or caused to be made by the Defendants, including but not limited to, each separate invoice, certification, or representation submitted by Defendants to the United States Government, and any associated state agencies, during the relevant period of the fraudulent scheme, with the amount adjusted for inflation in accordance with the Federal Civil Penalties Inflation Adjustment Act;

3. Qui Tam Relator's Award: Pursuant to 31 U.S.C. § 3730(d)(1), award Plaintiff, as the qui tam relator, a portion of the proceeds of the action or settlement of the claims, including but not limited to, an amount of the total proceeds, as provided by the False Claims Act, in recognition of Plaintiff's significant contribution and efforts in uncovering and reporting Defendants' fraudulent scheme, which resulted in the recovery of federal funds and prevention of further fraud;

4. Reasonable Attorney's Fees and Costs: Award Plaintiff all reasonable attorney's fees, costs, and expenses incurred in bringing this action, including, but not limited to, any expert witness fees, litigation costs, and all other disbursements associated with the investigation, preparation, and prosecution of this case, as provided for under 31 U.S.C. § 3730(d)(1) and other applicable law;

5. Equitable and Injunctive Relief: Grant equitable relief, including declaratory and injunctive relief, as the Court deems just and proper, to permanently enjoin Defendants from engaging in similar unlawful conduct in the future and to prevent further harm to the United States Government and the public. Specifically, this includes but is not limited to, enjoining Defendants from making any further false or misleading statements, engaging in fraudulent practices, or submitting claims for payment under any federally funded contracts unless and until they comply with all applicable

federal, state, and local regulations.

6. Restitution and Disgorgement: Order Defendants to provide full restitution and disgorgement of all amounts wrongfully obtained through fraudulent means, including but not limited to, any unjust enrichment, illicit profits, or gains realized as a result of Defendants' fraudulent conduct in connection with the CALTRAIN Electrification Project, and any other federally funded contracts that were tainted by their fraudulent scheme.

7. Punitive Damages: Award punitive damages against Defendants to the extent permitted by law, in light of the egregious, willful, and intentional nature of Defendants' misconduct, and to deter Defendants and other entities from committing similar acts of fraud and deceit in the future;

8. Interest on Damages and Penalties: Award pre-judgment and post-judgment interest on all damages, penalties, and other monetary awards, at the highest rate allowed by law, from the date of the first instance of fraud until full satisfaction of all obligations, to fully compensate the United States Government and the Plaintiff for the loss of use of its funds and the time value of money.

9. Reimbursement for DBE Damages: Award special damages for Defendants' fraudulent representation and harm caused to legitimate Disadvantaged Business Enterprises and minority-owned and women-owned businesses, whose opportunities and potential contracts were unfairly diverted or withheld as a direct consequence of Defendants' unlawful actions and manipulation of federal DBE participation requirements.

10. Compensation awards to Plaintiff for lost job opportunities, proper and legal contracting work opportunities on the CALTRAIN electrification project.

10. Additional Relief as Deemed Appropriate: Grant such other and further relief, both in law and equity, as this Court deems just, equitable, and proper under the circumstances, including any additional damages, sanctions, or remedies necessary to prevent and remedy the harm caused by Defendants' fraudulent conduct, to ensure full accountability, and to safeguard the integrity of the

federal contracting and procurement process.

Respectfully Submitted By:

_____

Ameer Alghusain, Pro Se
Mobile (310) 926-9090
e-mail: Ameer@amidac.com

Dated on this 11th day of October 2024.

38