Gregory G. Paul (SBN 233060)
PAUL LAW OFFICES
540 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 326-8300
Facsimile: (888) 822-9421
Email: gregpaul@paullaw.com

Attorney for Plaintiff/Relator

FILED

**April 3, 2025**

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, EX. REL. AMEER ALGHUSAIN, <br><br> *Plaintiff,* <br><br> vs. <br><br> BALFOUR BEATTY INFRASTRUCTURE, INC., PROGRAM MANAGEMENT GROUP, LLC, TRANSIT AMERICA SERVICES, INC., QUALITY ENGINEERING, INC.; U.S. RAIL SYSTEMS, INC., and DOES 1-20, <br><br> *Defendants.* | Case No.: 24-cv-07133- JSC <br><br> **AMENDED COMPLAINT** <br><br> **Filed in Camera under Seal pursuant to 31 U.S.C. §3730(b)(2)** <br><br> **COUNT I:** Violations of False Claims Act (31 U.S.C. §3729 et seq) <br><br> **COUNT II:** California False Claims Act (California Code 12652 et seq.) <br><br> Complaint Filed: October 11, 2024 <br><br> **JURY TRIAL DEMANDED** |

## I. INTRODUCTION

AND NOW, comes the Plaintiff/Relator, Ameer Alghusain, by and through his undersigned counsel and files the this Amended Complaint alleging violations of the False Claims Act, 31 U.S.C. 3729, et seq., and the California False Claims Act, Cal. Code 12652 et seq. Plaintiff/Relator brings this action on behalf of the United States of America (or the federal government) and the state of California (or the state). This case involves the illegal submission of false claims through intentionally submitting inflated claims, substandard work, unnecessary work,

1

falsifying work completion reports, falsifying certifications of compliance according to milestones, submitting improper invoices and receiving payments from the state and federal governments.

1. This is a civil action brought by Plaintiff., Ameer Alghusain, (herein "Plaintiff" or "Relator"), as a Relator on behalf of the United States of America, pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 - 3733, to recover treble damages, civil penalties, and other relief arising from the Defendants' fraudulent scheme to knowingly submit, and cause others to submit, false claims for payment to the state and federal governments. The False Claims Act is designed to combat and prevent fraudulent actions by contractors, grantees, and others who seek to improperly receive government funds. This action is brought to hold the Defendants accountable for their conduct in the multi-billion-dollar "CALTRAIN Electrification Project," (herein the "Project"), a critical infrastructure initiative funded by both state and federal grants.

2. Under these provisions, Plaintiff seeks to recover damages on behalf of the United States based on Defendants' illegal conduct, which caused the U.S. Government to pay inflated claims, fund substandard work, and suffer immense financial losses due to the misrepresentation and misapplication of federal funds. This lawsuit is premised on an extensive scheme of deception, misrepresentation, and manipulation carried out by Defendants, including Balfour Beatty Infrastructure, Inc., and others, who collectively conspired to defraud the U.S. Government by engaging in the following fraudulent activities:

- Knowingly Submitting False Claims for reimbursement under government contracts by inflating costs, falsifying work completion reports, and submitting false certifications of compliance with federal contracting requirements;

- Falsifying Compliance with the Disadvantaged Business Enterprise ("DBE") Program to fraudulently obtain government approval and funding, using front

companies and sham partnerships that were neither minority- nor women-owned as required by federal regulations;

- Engaging in a Pattern of Billing for Unperformed and Unnecessary Work by manipulating invoices, certifying falsified project costs, and submitting false reports to federal oversight agencies to conceal delays, failures, and non-compliance; and

- Creating Sham Joint Ventures and Manipulating Contract Allocations among themselves to siphon off federal funds intended for legitimate small business contractors, depriving the government of the intended benefit of those funds.

**II. NATURE OF THE CASE**

3.     This Complaint arises from Defendants' pervasive pattern of fraudulent and deceptive practices in their performance and oversight of the CALTRAIN Electrification Project, which spans fifty-two (52) miles between San Francisco and San Jose, California. Through deliberate misconduct, Defendants repeatedly misrepresented their compliance with contract requirements, engaged in fraudulent billing, and knowingly submitted false claims and certifications to federal agencies, including the U.S. Department of Transportation ("DOT"), Federal Railroad Administration ("FRA") and the Federal Transit Administration (herein "FTA"). These fraudulent actions resulted in the United States Government disbursing substantial sums of taxpayer money to Defendants for work that was not performed in accordance with federal safety standards, project specifications, or contractual obligations.

4.     The fraudulent scheme began in 2016 when Balfour was awarded a $697 million contract to electrify and modernize the CALTRAIN corridor as part of the Peninsula Corridor Electrification Project (PCEP).

5.     Since that time, Defendants have engaged in a complex web of deceit, which included fabricating safety certifications, creating fictitious entities to qualify for preferential

3

contracting terms, and systematically misclassifying employees to avoid paying legally required wages and benefits. Despite multiple opportunities to correct these violations, Defendants chose to conceal their fraud, perpetuating an unsafe and incomplete infrastructure project while continuing to bill the federal government under the false pretense of project compliance.

6.      This suit is not based upon prior public disclosures of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit or investigation or in a Government Accounting Office or Auditor General's report, hearing, audit or investigation, or from the news media.

7.      To the extent that there has been a public disclosure unknown to Relator, Relator is an original source under 31 U.S.C. §3730(e)(4), and the other government false claims statutes. Plaintiff and Relator has direct and independent knowledge of the information on which the allegations are based.

8.      Relator is concurrently providing to the Attorney General of the United States, to the United States Attorney for Northern District of California, and to the appropriate attorneys for the other government plaintiffs, a statement summarizing known material evidence and information related to this Complaint, in accordance with the provisions of 31 U.S.C. §3730(b)(2) and the similar provisions of the other government false claims acts. This disclosure statement is supported by material evidence.

### III. JURISDICTION AND VENUE

9.      This is a civil action arising under the laws of the United States to redress violations of the False Claims Act, 31 U.S.C. §§3729 et seq. This court has jurisdiction over the subject matter of this action: (i) pursuant to 31 U.S.C. §3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730; and (ii) pursuant to 28 U.S.C. §1331, which confers federal subject matter jurisdiction; and (iii) pursuant

4

to 28 U.S.C. §1345, because the United States is a plaintiff.

10.     This court has jurisdiction over Defendants under 31 U.S.C. §3732(a) because Defendants can be found in, are authorized to transact business in, and are now transacting business in California. In addition, acts proscribed by 31 U.S.C. §3729 have occurred in this District.

11.     Venue is proper in the Northern District of California under 31 U.S.C. § 3732(a), which provides that an FCA action may be brought in any judicial district where the defendant or any of the defendants reside, conduct business, or where any act proscribed by the FCA occurred. In this case, a substantial part of the events and omissions giving rise to the claims occurred within this judicial district, specifically in San Mateo County, San Francisco County, and Santa Clara County.

12.     Additionally, specific actions underlying the claims, such as the submission of falsified Disadvantaged Business Enterprise (herein "DBE") certifications, misrepresentations in contract negotiations, and inflated invoices, occurred at project sites and offices located in the Northern District of California.

13.     This Court also has supplemental jurisdiction over any related state law claims pursuant to 28 U.S.C. § 1367(a), as such claims form part of the same case or controversy under Article III of the United States Constitution. The state law claims share a common nucleus of operative facts with the federal FCA claims because they arise from the same fraudulent conduct, involve the same parties, and seek redress for overlapping harms.

### IV.     THE PARTIES

14.     Plaintiff/Relator, Ameer Alghusain ("Plaintiff" or "Relator"), is a citizen of the United States residing in Santa Clara County, California. Plaintiff is a distinguished and highly credentialed Railroad and Trains Engineer, possessing over twenty (20) years of experience in the

rail and transit industries across multiple jurisdictions, including the United States, Asia, and Europe. Plaintiff holds both a bachelor's and master's degree in electrical engineering and has served in various senior technical roles on complex rail projects globally. During his tenure on the CALTRAIN Electrification Project ("PCEP"), Plaintiff held a critical role in project management and oversight, during which he directly observed, documented, and reported pervasive patterns of fraudulent activity, material misrepresentations, and systemic non-compliance with federal and state regulations by the Defendants. Plaintiff brings this action on behalf of the United States of America as a whistleblower under the False Claims Act ("FCA"), seeking to expose and remedy the extensive fraudulent scheme perpetrated by the Defendants that resulted in significant financial harm to the federal government and compromised the safety and integrity of a major public transportation project.

15.    This action is brought on behalf of the United States to recover all damages, penalties and other remedies established by and pursuant to 31 U.S.C.A. §§ 3729 to 3733 and Plaintiff claims entitlement to a portion of any recovery obtained by the United States qui tam plaintiffs authorized by 31 U.S.C.A. §3730.

16.    Defendant Balfour Beatty Infrastructure, Inc. ("Balfour") is a foreign corporation organized and existing under the laws of the United Kingdom, and it is registered to conduct business within the State of California. Balfour was engaged as the primary contractor for the CALTRAIN Electrification Project, responsible for the construction, electrification, and final testing of the rail line modernization. Balfour has a principal business address located at 2121 South El Camino Real, Suite 1000, San Mateo, California 94403. During its role as the primary contractor, Balfour directed, managed, and controlled numerous subcontractors and affiliates, including co-Defendants, in furtherance of the unlawful schemes described herein. Balfour knowingly submitted and caused to be submitted false claims and certifications for payment,

misrepresented compliance with contract requirements, and conspired to circumvent federal and state regulations intended to ensure safety, accountability, and lawful disbursement of public funds.

17.     Defendant, Balfour Beatty Infrastructure, Inc. is no stranger to the False Claims Act. In 2005, a former employee of Balfour Beatty, brought a false claims act concerning inflated claims on an Amtrak project to electrify the rail corridor between New Haven and Boston resulting in a 24.75 million recovery. More recently in 2021, Balfour Beatty was ordered to pay over $65 million related to a fraud scheme in military housing, described by the Deputy Attorney General that "this pervasive fraud was a consequence of BBC's broken corporate culture".

18.     Defendant US Rail Systems, Inc. ("US RAIL") is a contractor and/or subcontractor that performed work on the CALTRAIN Electrification Project. US RAIL is a corporation organized under the laws of the State of California with a principal place of business at 444 S. Flower Street, Suite 1300, Los Angeles, California 90072. As a direct participant in the construction and modernization efforts, US RAIL was actively engaged in the preparation and submission of fraudulent work reports, compliance certifications, and invoices, all of which were materially false and designed to induce payment by the federal government under false pretenses. US RAIL played a central role in the implementation and concealment of the scheme to misappropriate federal funds.

19.     Defendant Program Management Group, LLC ("PMG") is a California limited liability company that provided project management and oversight services on the CALTRAIN Electrification Project. PMG, acting through its officers and agents, facilitated and supported the submission of fraudulent project documentation, thereby enabling other Defendants to circumvent compliance obligations and obtain unwarranted payments. PMG's principal office is located at 3527 Mt. Diablo Blvd., Suite 314, Lafayette, California 94549. At all relevant times, PMG was

complicit in and benefited from the fraudulent activities orchestrated by Defendants, including the misrepresentation of Disadvantaged Business Enterprise ("DBE") participation and the falsification of project deliverables.

20.     Defendants Does 1 through 20 ("John Doe Defendants"), inclusive, are individuals and entities whose identities are presently unknown to Plaintiff. Upon information and belief, these Defendants participated in, conspired, aided, abetted, or otherwise assisted in the commission of the fraudulent acts described in this Complaint. These Doe Defendants, acting in concert with the named Defendants, intentionally concealed their identities and involvement to further evade detection and accountability. Plaintiff intends to seek leave to amend this Complaint to identify and include these additional parties once their identities and roles are ascertained through the course of discovery and further investigation.

### V. SUMMARY OF FRAUDULENT CONDUCT

21.     Ameer Alghusain was employed on the CALTRAIN Electrification Project (PCEP) since November 2019. He was terminated by Balfour Beatty on August 7, 2024. As the Manager of Trains and later the Senior Electrical Trains & Electrification Engineer, Mr. Alghusain was responsible for compliance with technical, safety and operational standards. In this position, Mr. Alghusain gained knowledge of the following activities.

22.     Submission of Fraudulent Invoices: Balfour Beatty's Submission of False Invoices and Caltrain's Complicity in Fraudulent Activities. Between August and December 2023, Balfour Beatty submitted multiple fraudulent invoices to CALTRAIN for the disbursement of substantial completion payments totaling $300 million for the CALTRAIN Electrification project. CALTRAIN paid these false invoices and withdrew funds from the federal government grants, specifically, from FRA and FTA agencies.

23.     Falsification of Power Substations Site Acceptance Tests:

Balfour Beatty falsely reported the completion of the Power Substations Site Acceptance Tests for the 7 Parallel Power Substations in San Francisco and San Jose, as well as the short circuit testing and live power loop testing for Power Substations 1 and 2. These tests were not completed as required, yet invoices were submitted and approved.

24.    Failure to Complete Transformer Testing:

Balfour Beatty failed to conduct necessary transformer testing on-site for both the San Francisco and San Jose main transformer sites. Despite this, they submitted false documentation to CALTRAIN, falsely representing that the tests had been completed.

25.    Submission of False Grounding and Bonding Reports:

In April 2023, Balfour Beatty employed Wayne Richardson to perform a survey on grounding and bonding. The resulting reports, which were submitted to CALTRAIN, were fabricated without any power testing equipment or engineering approvals, misleading CALTRAIN into processing these false reports as legitimate.

26.    Fabrication of Critical Project Documents:

Between February and August 2023, Balfour Beatty fabricated critical technical documents necessary for the project's completion. These documents were unsigned, forged, or had prior testing signatures falsified. Despite their lack of validity, CALTRAIN approved and used these documents, even hiring former Balfour Beatty employees and contractors to act as consultants to approve the same documents they had fabricated in previous years. CALTRAIN subsequently submitted these fraudulent documents to federal agencies for payment reimbursements.

27.    False Grounding and Bonding Work and Invoices:

Balfour Beatty subcontracted United ECM and Wayne Richardson to perform grounding and bonding welding of cables to tracks, submitting invoices totaling $2 million for non-existent labor and inspections. These invoices were later discovered to be fraudulent, as the work was

9

incomplete and inadequate. Specifically, Balfour Beatty failed to adhere to industry standards by neglecting to cover copper cables, which were subsequently stolen multiple times by thieves and homeless individuals due to the inadequate installation.

28. False Certifications of Quality and Conspiracy to Defraud the federal government through the CALTRAIN Electrification grant:

Balfour Beatty employed Quality Engineering Inc., US RAIL SYSTEMS, and other subcontractors to provide false certifications of quality for various project components, including Power Transformers, SCADA systems, testing, integration, and operations and maintenance manuals. CALTRAIN, in collusion with Balfour Beatty, knowingly paid for these false quality reports, which were submitted to CALTRAIN and used to facilitate fraudulent claims for project completion.

29. Submission of False Completion Claims:

On April 4, 2024, Balfour Beatty falsely submitted invoices claiming to have completed 99% of the electrification work. These invoices were directed to Caltrain's engineering records department and the accounting department, which approved claims of 85% completion, despite the fact that significant portions of the work were incomplete or improperly performed.

30. Falsification of Compliance Reports: BALFOUR BEATTY falsified and did not complete mandated IEEE power acceptance report in the field and did not perform and obtain engineering signatures on NEMA and AREMA mandated safety reports for the main power substations and the parallel power substations 1, 2.

31. Falsification of Testing and Safety Documentation:

Wayne Richardson, Scott Richards and Balfour Beatty falsified engineering electronic signatures of qualified engineers including the Relator on testing procedures related to Power Substations 1-7 and Wayside Control Room 1-7. Balfour Beatty on July 2023 submitted incomplete Operations and

10

Maintenance manual to CALTRAIN and Transit America Services as basis to operate and maintain the system. Balfour Beatty received payments of at least $6 million for this document, and CALTRAIN submitted this final manual to the federal government as part of successfully completing the last phase of the project, then CALTRAIN asked Transit America Services in April 2024 to re-create the same manual and submitted it again to the Federal Government as amended manual and received an additional funds reimbursement knowing it was unnecessary and redundant and repeated work.

32.     Misrepresentation of DBE Participation: Balfour Beatty hired Quality Engineering Inc. and UNITED ECM and other consultants and falsely designated them as Disadvantaged Business Enterprises and invoiced more than $30 million dollars to CALTRAIN and CALTRAIN knowingly conspired to allow these invoices to be paid to Balfour Beatty as part of federally mandated DBE participations programs.

33.     CALTRAIN and Transit America Services submitted work and reports in 2020-2024 claimed to be completed by women and minority owned businesses but in fact was done by US Rail Inc. and Quality Engineering Inc and other contractors.

34.     Quality Engineering Inc. submitted quality reports from 2022 until July 2023 that at least 200 documents produced by Balfour Beatty were in full compliance with Safety and Regulatory bodies, specifically test procedures and maintenance manual of Caltrain Electrified lines and submitted these documents to CALTRAIN and CALTRAIN submitted them to FRA, FTA and US DOT.

35.     From 2016 to the present, Defendants, through a calculated and multifaceted scheme, engaged in an orchestrated plan to defraud the United States Government and other federal agencies, including the U.S. Department of Transportation ("DOT") and the Federal Transit Administration ("FTA"), by submitting false certifications of compliance with federal regulations, inflating project costs, and falsifying critical safety, operational, and maintenance milestones required under the CALTRAIN Electrification Project. The Defendants' actions were in direct violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, which prohibits any person or entity from knowingly submitting, or causing to be submitted, false claims for payment to the government, making or using false records or statements material to a false claim, or conspiring to defraud the government through the submission of false claims.

11

36.     CALTRAIN received $96,635,000 from the federal government between 2016 and 2022 for the Positive Train Control (PTC) Project, which is an advanced signal system that equips the corridor with federally-mandated safety technology. PTC is an interoperable system with all other rail systems that access the Caltrain corridor, including commuter rail, freight rail and, in the future, high-speed rail. The Caltrain PTC system was certified by the Federal Railroad Administration (FRA) in December 2020, however, this certification is false, because Balfour Beatty conspired with CALTRAIN and Transit America Services and submitted false PTC test reports that shows all locomotives have successfully been equipped with PTC, in fact only 2 locomotives (partially where PTC working) from 29 total locomotives. Specifically, 5 F40PH-2 EMD locomotives, and 13 F40PH-2-CAT EMD locomotives and 3 F40PH-2C BOISE Locomotives never got the PTC to be operating as intended and CALTRAIN certified the entire fleet as PTC compliant.

37.     Ameer Alghusain and lead electricians refused to send final PTC certification to CALTRAIN in 2019 and 2020, however, CALTRAIN in cooperation with Balfour Beatty and Transit America Services falsified the reports and submitted them to the Federal Authorities in December 2020, CALTRAIN and Balfour Beatty and Transit America Services disposed of the entire fleet to Lima Peru to cover up this fraud.

38.     CALTRAIN new electric trains made by Swiss manufacturer are equipped by PTC because they are new train, this fact constitutes CALTRAIN waste and fraud of more than $96,635,000.

39.     Caltrain's Chief Operations Officer, John Hogan, and OCS Manager, Scot Sidley, have been involved in the deliberate creation of fraudulent documentation to unlawfully designate US Rail Systems Inc. as the sole supplier of electrification services for a major project that was funded by the FTA, FRA and the federal government. This deceptive move was designed to exclude all other qualified bidders, including Small Business Enterprises (SBE), Disadvantaged Business Enterprises (DBE), and minority-owned businesses, thereby undermining the fair bidding process and preventing competition.

40.     The fraudulent document in question was falsely marked "No Federal Funding Use," a misrepresentation that was intentionally used to circumvent proper procurement protocols and mislead oversight authorities. This document enabled US Rail Systems to secure a $7.5 million contract under false pretenses, despite their lack of meaningful involvement in the project. US Rail

Systems, to date, has failed to perform any significant work and has never even appeared on-site, yet they received substantial payments from the federally funded electrification project.

41.     In 2022-2023, CALTRAIN received $43 million in federal funding and $1 million in federal funding dedicated for safety and signaling aiming at reducing CALTRAIN accidents with cars and pedestrians, CALTRAIN claimed to have given this funding to BALFOUR BEATTY to integrate this funding into the Electrification Project, this funding was dedicated for tracks separation and advanced signaling systems, when Mr. Alghusain worked at BALFOUR BEATTY, he did not see any integration of software, hardware or documents into the railroad signaling system on the CALTRAIN lines, and no upgrades have been completed to reduce accidents or enhance safety (either in equipment, hardware or software).

42.     However, in 2023, Balfour Beatty submitted false reports that the signaling system is faster, more responsive and new equipment had been installed, and new software have been tested and approved. Balfour Beatty submitted false reports to CALTRAIN  and Transit America Services knew about these are not true, and still submitted false reports to the federal government and California Public Utilities Commission. As of today, due to failures of the safety signaling system, CALTRAIN deaths at the railroad line doubled since the electrification has been in use. Caltrain on July 20, 2024 in conjunction with testing data warning deaths will increase due to slow signaling systems of the Electrification, CALTRAIN decided to keep all deaths confidential, claiming it will reduce suicide deaths, which is not true. The fact that CALTRAIN failed to actually instruct its contactors BALFOUR BEATTY and Transit America Services to re-do the incomplete work, and falsely report to the federal government that the project funding was used properly is fraud by itself.

43.     Balfour Beatty and Transit America Services, with the approval of CALTRAIN management, created shadowing workforce for installing grounding and bonding wires for the power substations in 2023-2024. This shadowing workforce was incompetent, unable and fraudulent compromising of British nationals recruited by Scott Richards, Wayne Richardson, inexperienced laborer and interns hired by Balfour Beatty as contractors to do this work at night when real workforce left the site, in violation of CALTRAIN and BALFOUR BEATTY labor agreements with the International Brotherhood of Electrical Workers local Union signed during the electrification project. The Union filed a lawsuit in this district court, styled 3:24-cv-03264-RS *International Brotherhood of Electrical Workers et al v. Balfour Beatty Infrastructure, Inc*. alleging work has been illegally re-assigned to a shadowing, cheaper and non-union workforce. The case is still pending. Due to this incompetent work and services, and due to lack of following engineering

13

standards, most work must be re-done, and CALTRAIN, Balfour Beatty AND Transit America Services, conspired with Scott Richards and Wayne Richardson and submitted false invoices to CALTRAIN asking for full pay, while work was not completed at all, was done wrong, or was not properly finished, and CALTRAIN submitted these invoices to the federal government for reimbursement in excess of $100 million, while the actual work does not amount to $1 million. Because the shadowing workforce incompetency, and not following engineering standards of covering copper cable with concrete or insulation materials, thieves and homeless stole most the impedance bond cables from the railroad line. And the remaining short circuit testing was falsified by BBII. Ameer Alghusain witnessed this shadowing cheap-rate workforce at BBII offices, while BBII and its contractors submitted full price invoices to CALTRAIN and CALTRAIN asked for full pay multipliers from the federal government.

44. Sherry Bullock has served as the Director of the Caltrain Electrification Program since 2021. Alongside this official role, she also operates her own business, Program Management Group LLC, which provides consulting services. During her tenure as a government official with Caltrain, Bullock has reportedly continued to run her private consulting company, raising serious ethical concerns and questions about potential conflicts of interest.

45. In 2022 and 2023, Bullock allegedly earned substantial income from her company, amounting to $635,496 in 2022 and $672,102 in 2023. She claims that these earnings stem from consulting work related to the Caltrain Electrification Program. However, it appears that Bullock has manipulated the program's accounting system, billing Caltrain for consulting services through her private company. Over the course of these two years, Bullock allegedly received $1.3 million in total payments from Caltrain, which were purportedly directed to her company under the guise of consulting work.

46. The complexity of this situation arises from the fact that Bullock is reportedly unable to perform both her full-time role at Caltrain and manage such a significant volume of additional consulting work. It appears highly unlikely that she could log the hours necessary to justify the $1.3 million in payments while maintaining her position as the program director. Additionally, this money was allegedly misappropriated from federal funds allocated for the electrification project, which is intended for infrastructure development, not personal financial gain.

47. This behavior raises serious concerns about fraudulent billing, conflict of interest, and misuse of federal funding. It is critical that a thorough investigation is conducted to understand how funds were diverted from the public project to Bullock's private company and whether proper

procedures were followed in the allocation and spending of federal funds. The integrity of government programs must be upheld to ensure public trust and proper stewardship of taxpayer dollars.

48.     On December 2024, CALTRAIN approved an additional large payment exceeding $25 million to BBII claiming BBII incurred high labor costs, and high inflated material costs in the last 6 months, this false claim and false invoice was billed to CALTRAIN and CALTRAIN submitted it for reimbursement from the Federal government electrification project.

49.     Specifically, Defendants knowingly submitted or caused to be submitted numerous false claims and fraudulent invoices to federal funding agencies by falsely certifying compliance with project specifications, safety protocols, and federal procurement standards. Such false certifications were intended to induce the United States to disburse funds under the terms of the federally funded contracts without Defendants having met the contractual and legal obligations required under the applicable federal statutes and regulations, including:

i.  49 U.S.C. § 5323(m), which requires compliance with federal Buy America requirements mandating that iron, steel, and manufactured goods used in federally funded transit projects be produced in the United States.

ii.  2 C.F.R. Part 200, which outlines the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, requiring Defendants to maintain adequate documentation, internal controls, and cost accounting practices in connection with the use of federal funds.

iii.  49 C.F.R. Part 26, which establishes the standards for Disadvantaged Business Enterprise ("DBE") participation, mandates full and honest reporting of DBE compliance, and prohibits fraudulent misrepresentations regarding the use of DBE subcontractors and minority-owned businesses.

50.     The Defendants, including but not limited to Balfour Beatty Infrastructure, Inc. (herein "Balfour"), US Rail Systems, Inc., and Program Management Group, LLC (herein "PMG"), acted in concert to fraudulently inflate project costs, falsify completion timelines, and conceal non-compliance with federal safety standards. This unlawful conduct was perpetrated through the

15

intentional submission of false claims to obtain federal payments, knowing that the project was plagued by serious technical deficiencies and safety violations. Defendants made material misrepresentations regarding project readiness, the quality and authenticity of work performed, and the proper expenditure of federal funds, resulting in substantial harm to the United States Government and the American public.

51.    The False Claims Act, pursuant to 31 U.S.C. § 3729(a)(1), prohibits the following activities, all of which Defendants engaged in:

a. 31 U.S.C. § 3729(a)(1)(A): Knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval.

b. 31 U.S.C. § 3729(a)(1)(B): Knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim.

c. 31 U.S.C. § 3729(a)(1)(C): Conspiring to commit a violation of the False Claims Act.

d. 31 U.S.C. § 3729(a)(1)(G): Knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the government.

52.    Defendants' fraudulent conduct included, but was not limited to, the following specific acts and misrepresentations:

a. Submission of Fraudulent Invoices: Defendants knowingly submitted numerous fraudulent invoices to the U.S. Government and CALTRAIN's financial offices that grossly overstated the amount of work completed, misrepresented compliance with contractual and regulatory requirements, and concealed substandard and incomplete work. Many of these invoices charged the federal government and CALTRAIN for work that was not performed, including charges for personnel who were not present on-site, and inflated costs for materials and services that did not conform to federal Buy America standards.

b. Falsification of Compliance Certifications: Defendants repeatedly submitted false

certifications of compliance with the National Transit Systems Security Act ("NTSSA"), 6 U.S.C. § 1142, and the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109, falsely attesting that the work performed adhered to federal safety regulations and met the required technical specifications. These false certifications were used to support claims for payment and led to the disbursement of substantial federal funds under false pretenses.

c. Fabrication of Testing and Safety Documentation: Defendants knowingly falsified critical safety and testing documentation for various phases of the electrification project. This included fabricating results for electrical testing, operational performance, and safety validations that were never performed. By falsely representing that the project had successfully met safety milestones, Defendants misled federal regulators and compromised the integrity and safety of the rail system.

d. Misrepresentation of DBE Participation: Defendants falsely reported compliance with 49 C.F.R. Part 26, fraudulently claiming that Disadvantaged Business Enterprises ("DBEs") were engaged and performing a meaningful portion of the project work. In reality, Defendants set up shell companies and front entities to falsely inflate DBE participation numbers, thereby depriving legitimate minority-owned and women-owned businesses of federally mandated contracting opportunities.

53. As a direct and proximate result of the Defendants' fraudulent scheme, the United States Government suffered substantial financial losses, estimated to exceed one billion dollars ($1,000,000,000) in damages over the duration of the project. This amount includes federal payments made based on false representations, the costs of re-work necessitated by substandard and defective work, and the expenditures associated with delays and safety violations caused by Defendants' actions.

17

54. Additionally, Defendants' fraudulent acts pose an ongoing threat to public safety, as many of the falsified safety documents and improperly executed work continue to be relied upon by CALTRAIN and its operators in the daily operation of the electrified rail corridor. Defendants' reckless disregard for public safety and federal regulations not only violated the FCA but also breached numerous statutory obligations under the Federal Railroad Safety Act and other federal safety regulations.

55. Through this action, Plaintiff seeks to hold Defendants fully accountable for their egregious and deliberate misconduct, recover the full measure of damages suffered by the United States, and impose the maximum statutory penalties allowable under the False Claims Act, including treble damages and civil penalties under 31 U.S.C. § 3729(a). Plaintiff further seeks a comprehensive accounting of all federal funds disbursed, restitution of amounts improperly obtained, and an injunction prohibiting Defendants from further violating federal law.

56. Pursuant to 31 U.S.C. § 3730(d), Plaintiff, as the Relator, seeks an award for his role in exposing the Defendants' fraudulent conduct, as well as reasonable attorney's fees and costs incurred in prosecuting this action. Plaintiff also requests that this Court grant all other relief deemed just and appropriate, including any additional remedies necessary to protect the public interest and ensure the integrity of the federal contracting process.

## <u>COUNT I</u>

### Violations of False Claims Act under 31 U.S.C. §3729 et seq

57. Relator-plaintiff incorporates by reference and re-allege all above paragraphs as if fully set forth herein.

58. This Count is brought by Relator-plaintiff in the name of the United States against all Defendants under the *qui tam* provisions of 31 U.S.C. §3729 et seq. Defendants violated 31 U.S.C. §3729(a)(l)(A) by knowingly presenting and/or causing false claims to the United States,

18

in respect to the portions of program as described above. Defendants also violated 31 U.S.C. §3729(a)(1)(B) by knowingly making, using or causing to be made or used, false records or statements material to a false or fraudulent claims as described above, and failing to refund the government.

59. The false or fraudulent claims and statements were and are material to the United States paying for the claims described above, and the amounts of the claims were and are material as well. As a result, plaintiff United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

## COUNT II

### California False Claims Act
### (California Code 12652 et seq.)

60. Relator incorporates by reference and re-alleges all the above paragraphs as if fully set forth herein.

61. This Count is brought by Relator in the name of the State of California against all defendants under the *qui tam* provisions of California Code 12652 et seq. Defendants violated the state false claims act by knowingly failing to refund the State of California monies due as a result of the presentation of false claims to the state of California, as described above. Defendants also violated the California False Claims Act by knowingly making, using or causing to be made or used, false records or statements material to a false or fraudulent claim as described above.

### VI. PRAYER FOR RELIEF

62. WHEREFORE, Plaintiff, Ameer Alghusain, in his capacity as Relator on behalf of the United States of America, respectfully prays that this Honorable Court enter judgment in favor of

19

the Plaintiff and against the Defendants, and grant the following relief:

63. Treble Damages: Pursuant to 31 U.S.C. § 3729(a)(1), award the United States Government treble damages in an amount to be determined at trial for all losses incurred as a result of Defendants' fraudulent conduct, including, but not limited to, damages resulting from the submission of false claims, falsification of compliance certifications, and the misrepresentation of Disadvantaged Business Enterprise ("DBE") participation, as well as any additional consequential damages suffered by the Government due to the Defendants' unlawful actions;

64. Civil Monetary Penalties: Impose the maximum civil penalties as provided under 31 U.S.C. § 3729(a)(1)(G) for each and every false or fraudulent claim and statement made, used, or caused to be made by the Defendants, including but not limited to, each separate invoice, certification, or representation submitted by Defendants to the United States Government, and any associated state agencies, during the relevant period of the fraudulent scheme, with the amount adjusted for inflation in accordance with the Federal Civil Penalties Inflation Adjustment Act;

65. Qui Tam Relator's Award: Pursuant to 31 U.S.C. § 3730(d)(1), award Plaintiff, as the qui tam relator, a portion of the proceeds of the action or settlement of the claims, including but not limited to, a percentage of the total proceeds, as provided by the False Claims Act, in recognition of Plaintiff's significant contribution and efforts in uncovering and reporting Defendants' fraudulent scheme, which resulted in the recovery of federal funds and prevention of further fraud;

66. Reasonable Attorney's Fees and Costs: Award Plaintiff all reasonable attorney's fees, costs, and expenses incurred in bringing this action, including, but not limited to, any expert witness fees, litigation costs, and all other disbursements associated with the investigation, preparation, and prosecution of this case, as provided for under 31 U.S.C. § 3730(d)(1) and other applicable law;

67. Equitable and Injunctive Relief: Grant equitable relief, including declaratory and injunctive relief, as the Court deems just and proper, to permanently enjoin Defendants from engaging in

similar unlawful conduct in the future and to prevent further harm to the United States Government and the public. Specifically, this includes but is not limited to, enjoining Defendants from making any further false or misleading statements, engaging in fraudulent practices, or submitting claims for payment under any federally funded contracts unless and until they comply with all applicable federal, state, and local regulations;

68. Restitution and Disgorgement: Order Defendants to provide full restitution and disgorgement of all amounts wrongfully obtained through fraudulent means, including but not limited to, any unjust enrichment, illicit profits, or gains realized as a result of Defendants' fraudulent conduct in connection with the CALTRAIN Electrification Project, and any other federally funded contracts that were tainted by their fraudulent scheme;

69. Punitive Damages: Award punitive damages against Defendants to the extent permitted by law, in light of the egregious, willful, and intentional nature of Defendants' misconduct, and to deter Defendants and other entities from committing similar acts of fraud and deceit in the future;

70. Interest on Damages and Penalties: Award pre-judgment and post-judgment interest on all damages, penalties, and other monetary awards, at the highest rate allowed by law, from the date of the first instance of fraud until full satisfaction of all obligations, to fully compensate the United States Government and the Plaintiff for the loss of use of its funds and the time value of money;

71. Reimbursement for DBE Damages: Award special damages for Defendants' fraudulent representation and harm caused to legitimate Disadvantaged Business Enterprises and minority-owned and women-owned businesses, whose opportunities and potential contracts were unfairly diverted or withheld as a direct consequence of Defendants' unlawful actions and manipulation of federal DBE participation requirements;

72. Additional Relief as Deemed Appropriate: Grant such other and further relief, both in law and equity, as this Court deems just, equitable, and proper under the circumstances, including any

additional damages, sanctions, or remedies necessary to prevent and remedy the harm caused by Defendants' fraudulent conduct, to ensure full accountability, and to safeguard the integrity of the federal contracting and procurement process.

Dated: April 3, 2025                                   PAUL LAW OFFICES

                                                              /s/ Gregory Paul
                                                       Gregory G. Paul
                                                       Attorney for Plaintiff/Relator